195 So. 768
### GALLMAN v. STATE.
### 4 Div. 527.

Court of Appeals of Alabama.
Feb. 13, 1940.

Rehearing Stricken March 26, 1940.

A. L. Patterson and Roy L. Smith, both of Phenix City, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellant was indicted and charged with the offense of buying, receiving, concealing or aiding in concealing certain alleged stolen property. There was but one count in the indictment, which is as follows: "The Grand Jury of said County charge that, before the finding of this Indictment that Henry Gallman did buy, receive, conceal, or aid in concealing one lavatory of the value of $15.00, one kitchen sink of the value of $20.00, all of the aggregate value of $35.00, the personal property of L. L. Purvis, knowing that the same were stolen, and not having the intent to restore them to the owner."

The trial was had upon said indictment and resulted in the conviction of the defendant, as charged in the indictment, whereupon the court pronounced and entered a judgment of conviction and fixed his punishment at imprisonment in the penitentiary for an indeterminate period of not less than six years, and not more than six and one half years. From the judgment of conviction this appeal was taken.

The evidence offered by the State upon the trial of this case in the court below tended to prove that the defendant came into the possession of the property described in the indictment solely through a burglarization of the house of L. L. Purvis, which proof was wholly insufficient to authorize the conviction of the defendant. Foster v. State, 39 Ala. 229; Booker v. State, 151 Ala. 97, 44 So. 56; Adams v. State, 60 Fla. 1, 53 So. 451, Ann.Cas.1912B, 1209 and Note; Smith v. State, 59 Ohio St. 350, 52 N.E. 826; State v. Hamilton, 172 S.C. 453, 174 S.E. 396; People v. Berger, 142 Misc. 178, 254 N.Y.S. 136.

An acquittal upon an indictment charging the receiving of stolen goods not being a bar to a subsequent indictment for burglary, the defendant, to meet the proof offered by the State against him in the court below, testified as a witness in his own behalf and offered other testimony, all of which tended to show that the defendant bought the property, described in the indictment, bona fide and at a fair price.

The appellant has assigned numerous errors which he contends were committed by the trial court in the trial of his case and strenuously insists that all of the alleged errors of which he complains were greatly prejudicial to him upon his said trial. This court deems it necessary to consider only two of the alleged errors assigned by the appellant upon this appeal.

1. When the State rested its case upon the trial in the court below, it appears from this record that counsel for the defendant asked permission of the court to talk to their witness, Sam Jordan. Thereupon the solicitor announced that said witness was summoned also for the State, and that they would like to be present when counsel for the defendant talked to him, and thereupon the court said "That they (the solicitors) had the right."

The defendant thereupon reserved an exception to the action of the court in declining to permit counsel to confer with said witness without the presence of the solicitors. The record then recites that the court then said in open court: "The record doesn't show that any subpoena was ever issued for the witness, Jordan."

It is to be observed that the witness, Jordan, was then in court, and that the solicitor had announced that this witness "was summoned also for the State." Whether, or not, a summons had been issued for the witness, Jordan, for either the defendant, or the State, or both, is immaterial as it appears that at the time counsel for the defendant made request of the court for the examination of said witness that said witness was then in the witness room, and available for consultation.

The granting of a suspension of proceedings in the trial of a case for private consultation with a witness is, of course, discretionary with the trial court. This discretion extends to the determination of whether or not the court will suspend the trial for a sufficient length of time to enable counsel to interview a witness. The discretionary power vested in the court is to permit, or not to permit, the conference with the witness as a just, sound and reasonable exercise of the judicial discretion may determine. The trial court, in the opinion and judgment of this court, abused its discretion in permitting counsel for the defendant to confer with the witness, Sam Jordan, only in the presence of the State's solicitors. The trial court, in

the opinion and judgment of this court, was without legal power and authority to impose upon the defendant's right to confer with this witness, the arbitrary condition that such conference should take place in the presence of the State's solicitors.

 It is a mistake of a serious nature for a trial court, or opposing counsel, to assume or intimate that counsel for the defendant is not at full liberty to question, whenever he sees fit, any person who knows or is presumed to know the facts attendant upon the commission of the offense with which his client is accused. It is his solemn, sworn duty to ascertain, as far as he can, what the evidence is, and his duty is not at an end when he has examined, no matter how exhaustively, his client; he must see and talk with the witnesses. Sharwood's Legal Ethics, p. 121; Elliott's General Practice, Chapt. 1, Sections 1–5; Chitty's Practice, Vol. 2, pages 21 and 53.

The rule is well stated in a North Carolina case, State v. Williams, 91 N.C. 599, in the following language: "It is competent for the prisoner or his counsel to converse with any one supposed to have knowledge of the offence imputed and ascertain the facts so known. A party, even when the state is such, cannot by first summoning a witness deprive the other party, or the accused, of the testimony of the witness when favorable, nor of an opportunity of ascertaining what information he may possess, before putting him on the stand, as he might do should the state decline to introduce and examine him. His information ought 'to be sought and obtained voluntarily and fairly from the witness, and not by what he may deem to be a constraint."

To the same effect, we think, is the case of Wireman v. Commonwealth, 211 Ky. 495, 277 S.W. 822.

If the defendant had the right to confer with the witness, Jordan, at all, he had the right to such conference in the absence of any intimidating influences whatever. The defendant, himself, had no right to the information of the witness except that which he, voluntarily and fairly, was willing to give. If counsel for the defendant abuses his right in obtaining the true and voluntary statement of a witness with reference to the facts deemed relevant upon the trial of the case then such counsel is amenable to the statutes of this State prohibiting the bribery, or intimidation, of witnesses and other specified improper conduct in connection therewith. It is therefore the opinion and judgment of this court that the trial court committed reversible error and abused its discretion in imposing upon defendant the right to confer with the witness upon the sole condition that the State's solicitors be present at such conference.

2. During the progress of the trial of this case in the court below, the defendant introduced as a witness, one, Walter Ford, who testified, among other things, that he was an electrician, and that in the month of October, 1938; he was at the home of defendant, doing some electrical work, and that while there and at a time described as "a little before dark," two negroes came to this place in a truck, upon which they had some plumbing fixtures, and that they called the defendant out to this truck.

On cross examination the witness testified that they (the two negroes) had quite a few pieces of fixtures on the truck, and that the witness did not attempt to tell the jury that they had a lavatory and sink that were the property of L. L. Purvis. At this state of the cross examination, the solicitor propounded to said witness this question: "What about one lavatory, and one kitchen sink, and one toilet, of the value of $10.00, all of the aggregate value of $45.00, the property of J. F. Snellings. Do you know whether or not that was the property he had on that occasion?"

The defendant objected to the above and foregoing question assigning as grounds for said objections that said question called for illegal, irrelevant, incompetent, immaterial and inadmissible testimony, and further that said question called for testimony which had no bearing on the issue of the guilt, vel non, of the defendant, as charged in the indictment, and further that said question called for testimony whose sole and only effect would be to prejudice the defendant before the jury. The court overruled said objection and the defendant then and there duly and legally excepted and witness answered "No, sir." Thereupon the trial court, of the court's own volition, said in the presence of the jury: "He just saw certain fixtures, Mr. Andrews." The defendant objected to the above answer and moved the court to exclude it and for grounds of said objection and motion assigned the same grounds set out in the objection to said question. The

court' overruled said objection and motion and the defendant duly reserved an exception to the ruling of the court. The solicitor thereupon propounded the following question to the witness: "Do you know whether or not he had a toilet on there of Dr. R. C. Prather?" The defendant objected to said question upon the ground that the same called for illegal, irrelevant, incompetent, immaterial, and prejudicial testimony. The court overruled the defendant's objection, and the defendant then and there duly and legally excepted. The witness answered: "No, sir. I don't know." The defendant objected to the above answer and moved the court to exclude it together with the question calling for same and for grounds of said objection assigned the same grounds of objection above noted to the question. The court overruled said objection and motion, and the defendant duly reserved an exception to the ruling of the court. Thereupon the court stated: "He's already answered that he doesn't know anything about any of it." Thereupon the State's solicitor made the following statement to the court in the presence of the jury: "There are a number of indictments against this man and." Immediately the defendant objected to said statement and moved to exclude it and the court immediately ruled—"I sustain the objection. I don't think reference to those others is fair."

The defendant at this point moved the court that the case be withdrawn from the jury and a mistrial declared, because in the light of the statement made by the solicitor that a number of other indictments were pending against the defendant, and also that in the light of the questions permitted by the court to be answered over the objections of the defendant, the defendant cannot possibly be given a fair and impartial trial under the indictment in this case. To this objection the court replied: "There is no testimony about the ownership of any of the property that is alleged to have been on the truck from this witness." Thereupon the defendant again moved the court for a mistrial upon the grounds that the statement of the solicitor about the number of indictments against the defendant was made for the sole purpose of prejudicing the defendant, and the said statement could and would serve no other purpose, and because of the effect of such statement and the effect upon the minds of the jury created by any reference to such matter could not possibly be eradicated or eliminated by a ruling of the court. The court overruled said motion and the defendant duly reserved an exception to the ruling of the court.

In the case of Cassemus v. State, 16 Ala. App. 61, 75 So. 267, it was said in regard to remarks of a State solicitor made to the court in the presence of the jury, in his objections to the granting of a request made by the defendant that the court swear in an interpreter to translate the testimony of the defendant, a Greek, who could not speak or understand the English language, from the Greek language into English, which remarks were as follows: "I have had some experience with these interpreters in other cases, and I object to an interpreter being used in this case. It has been my experience that these Greeks and their interpreters fix up the evidence to suit themselves, and the interpreters do not say what the witnesses testified to, and do not correctly interpret what witness says."

Counsel for the defendant objected to the foregoing remarks of the solicitor as being highly improper and requested the court to so instruct the jury. The court sustained the objection of the defendant and specifically instructed the jury as follows: "That the said remarks of the solicitor were improper to be made in their presence, and that the jury must disregard said remarks and not consider them in any way, but that said remarks must be excluded from all consideration, and that they must try the case on the evidence in the case and pay no attention to such remarks of counsel, etc."

It was seriously insisted upon the appeal in the Cassemus case that although the trial court acted promptly and decisively with reference to the objectionable and prejudicial statement of the solicitor, yet the court's action did not, and could not, cure the injury and harm which had been done, and that even though said remarks were excluded, their tendency was of that character to highly prejudice and bias the jury against the defendant, and were calculated to and did have the effect of humiliating and intimidating the defendant to the extent of being very hurtful in the presentation of his case.

With reference to this question this court held: "We are of the opinion that there is merit in this contention; and while, on

the main appeal, we cannot review the action of the trial court as to this matter, for the reason that the ruling, as far as invoked on the main trial, was in favor of the defendant, and he cannot, therefore, assign it as error. But the defendant could and did assign as a ground for new trial this illegitimate remark of the solicitor, together with numerous other grounds, and duly excepted to the action of the court in overruling his motion for a new trial. Acts 1915, p. 722, confers upon this court the power to grant new trials, etc., in criminal as well as civil cases; and no presumption in favor of the correctness of the judgment of the court appealed from shall be indulged by the appellate court. We are of the opinion that the court erred in refusing a new trial to the defendant under the facts in this case. The remarks of the solicitor complained of, while directed to the court, were made in the presence of the jury, and, coming as they did, from the representative of the state, the solicitor, holding and wielding the great power and influence of that office in Jefferson county, may have had the tendency to prejudice and bias the jury against the defendant in their deliberations, notwithstanding the instructions of the court to the contrary."

In the case of Mitchell v. State, 22 Ala. App. 300, 115 So. 149, 150, a prosecution for violating the prohibition law was involved and the indictment averred, among other things, that the defendant "has heretofore been convicted of violating the prohibition laws of the state." The purpose of this allegation in the indictment was to put the court on notice that upon conviction of the defendant, it would be the duty of the court to make inquiry to ascertain if a prior conviction had been had against the defendant, for the purpose of having legal and proper punishment imposed by the court. The solicitor was permitted to read to the jury, as a part of the State's case, the above quoted excerpt from the indictment. The defendant made objection to the admission of said portion of said indictment which motion was promptly sustained by the court. Motion was then made by the defendant to withdraw the case from the jury and for a continuance, and this motion was overruled. Following this, and while a witness for the State was testifying as to the facts charged in the indictment, said witness testified: "Oh; I caught him before." On motion by the defendant this testimony was excluded, but a motion by

defendant to declare a mistrial and for a continuance was again overruled. The trial court, in making the last ruling, expressed a doubt as to whether the damage to the defendant could be eradicated from the minds of the jury, but, at the same time, said motion to declare a mistrial was overruled, and, in reviewing the action of the lower court, this court said: "It was error for the solicitor to read to the jury an excerpt from the indictment which declared as a solemn finding of the grand jury that the defendant had been previously convicted of a similar crime. It was error for the witness to testify that defendant had been 'caught before.' The trial court recognized these as errors and so ruled. He should have gone further and by charge and instruction impressed the jury as to the grave injustice that had been done the defendant. Even then we doubt if the injury could have been eradicated. The first duty of a trial judge in a criminal case is to see that the defendant on trial receives a fair and an impartial trial according to the forms of law and when a prosecuting officer oversteps the bounds of propriety and injects into the trial prejudicial matter, which will probably affect the verdict, a mistrial should be ordered and the case continued. Whitfield v. State, 21 Ala.App. 490, 109 So. 524."

The State, in the case at bar, should not have been permitted to build up a conviction of the defendant for the offense with which he was charged in the indictment on inferences of guilt from the fact that he had committed another offense, or other offenses. In the case of McGee v. State, 24 Ala.App. 124, 131 So. 248, 250, it is said with reference to the rule announced: "The justice, fairness, and reason for the rule is apparent, and, as said in the case of Gassenheimer v. State, 52 Ala. 313: 'A strict adherence to it is necessary to prevent criminal prosecutions from becoming instruments of oppression and injustice.' Dennison v. State, 17 Ala.App. 674, 677, 88 So. 211."

The defendant, here, was, in fairness, expected to appear in the lower court prepared to meet only the accusations contained in the indictment returned against him, which was buying, receiving, or concealing of the property described in that indictment, knowing it to have been stolen, etc., and on this account the evidence offered by the State should have been confined wholly to facts which were within the

range and scope of the allegations contained in that indictment and upon which the defendant was to be tried. The State's solicitor did not confine himself to proving the allegations of the indictment, but on his own motion made the prejudicial statement to the court in the presence of the jury that he had a number of indictments against the defendant.

In the above mentioned case of Dennison v. State, 17 Ala.App. 674, 88 So. 211, 214, this court, dealing with the proposition that during the trial of a criminal case, where the accused is being tried for the larceny of an automobile, it was error for the court to admit evidence for any purpose tending to show the theft of another automobile by the same party at a different time and place, said: "The evidence introduced over the defendant's objection relating to other offenses than that charged in the indictment no doubt alarmed the suspicions of the jury, or at least it may have had that effect, and inclined them the more readily to believe in the guilt of the defendant of the offense charged, and rendered the jury less inclined to listen or give proper weight and consideration to whatever was offered or said in his defense. For it is well known, in fact a matter of common knowledge, that the large majority of persons of average intelligence are untrained in logical methods of thinking, and are therefore prone to draw illogical and incorrect inferences and conclusions without foundation. It is also a matter of common knowledge that from such persons jurors are selected. And like others they will very naturally believe that a person is guilty of the offense with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally heinous character. So, as before stated, the general rule in this connection forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of the offense for which he is on trial."

Speaking to the same question this court in the case of Pointer v. State, 24 Ala.App. 23, 129 So. 787, 790, said: "The practice of injecting illegal considerations into a trial through the medium of improper arguments, statements, side remarks, and intimations calculated to influence the jury, has many times been condemned by appellate courts of this state. No holding can be too emphatic, or too solemn, that such inva-sions of the rights of parties in civil and criminal cases cannot be tolerated by courts charged with the duty of securing to all litigants trials which are lawful, impartial, and fair, both in form and in substance. No court should hesitate to set aside a verdict in a case where damaging testimony was delivered against objection by an incompetent witness—say a convicted perjurer. The invasion of the rights of the litigant is just as great and just as injurious where side remarks or illegal arguments convey to the jury ineradicable information of a damaging nature. When a trial attorney attempts to lay illegal matter before a jury, he must know that he is presenting to their consciousness something which it is always difficult, and often impossible, to eradicate from their minds; and such conduct cannot have the approval of this court."

█ In the case at bar, the State's solicitor stated to the court in the presence of the jury that there were a number of indictments against the defendant. What those indictments were, or for what offenses, the solicitor did not say. The only effect of that statement by the solicitor was the placing before the jury illegal matter which the solicitor must have known was being presented to their consciousness and which was impossible to be eradicated from their minds. When the defendant objected to that statement he also moved to exclude it and the court simply sustained the objection, saying: "I don't think reference to those others is fair." But the court did not exclude the statement of the solicitor, and thereupon the defendant moved the court that the case be withdrawn from the jury and a mistrial be declared. The trial court overruled this motion and refused to withdraw the case from the jury and declare a mistrial and furthermore the trial court did not then and there, nor afterwards, in the court's general oral charge, instruct the jury not to consider said statement, and not to be affected thereby and to disregard it. It is the opinion and judgment of this court that the trial court committed reversible error; first, in not excluding said improper and unfair statement made by the solicitor from the consideration of the jury, and, second, in not withdrawing said case from the consideration of the jury and then and there declaring a mistrial.

█ Finally, it must be admitted that the controlling question in all criminal

prosecutions is the guilt or innocence of the person accused of the crime for the commission of which he is being prosecuted. However guilty the defendant may appear to be from the evidence he is nevertheless entitled to a fair and impartial trial, and before a judgment of conviction can be permitted to stand, upon appeal, it must affirmatively appear that the trial below proceeded throughout without prejudicial and substantial error. Taylor v. State, 22 Ala. App. 428, 116 So. 415. It is the opinion and judgment of this court that the defendant, for the reasons hereinabove expressed, did not obtain a fair and impartial trial in the court below and it is further the opinion and judgment of this court that the judgment of the lower court must be reversed, and this cause must be remanded for a new trial in accordance with the views herein set out.

Reversed and remanded.